IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| TERRENCE HEATH WYNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 317-048 |
| | ) | |
| NANCY A. BERRYHILL, Deputy | ) | |
| Commissioner for Operations of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Terrence Heath Wynn appeals the decision of the Acting Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration.

**I.   BACKGROUND**

Plaintiff applied for DIB on July 25, 2014, alleging a disability onset date of April 30, 2012. Tr. ("R."), pp. 164-70. Plaintiff's last insured date for purposes of the DIB application is March 31, 2016. R. 178. Plaintiff was thirty-three years old on his alleged disability onset date. Id. Plaintiff applied for benefits based on allegations of chronic debilitating back and leg pain, ruptured discs, high blood pressure, and depression. R. 192. Plaintiff has a twelfth-grade

education, and, prior to his alleged disability, Plaintiff had accrued relevant work history as a truck driver, forklift operator, groundskeeper, and corrections officer. R. 37, 193.

The Social Security Administration denied Plaintiff's applications initially, R. 54-68, and on reconsideration, R. 68-84. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), R. 99-100, and the ALJ held a hearing on May 11, 2016. R. 30-53. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Tina Baker-Ivey, a Vocational Expert ("VE"). Id. On June 24, 2016, the ALJ issued an unfavorable decision. R. 10-25.

Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant did not engage in substantial gainful activity from April 30, 2012, the alleged onset date, though the last insured date of March 31, 2016 (20 C.F.R. §§ 404.1571 *et seq.*).

2. The claimant had the following severe impairment through the last insured date: degenerative disc disease (20 C.F.R. § 404.1520(c)).

3. Through the last insured date, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

4. Through the last insured date, the claimant has the RFC to perform sedentary work[1] as defined in 20 C.F.R. § 404.1567(a) except: sit/stand option; occasional pushing/pulling; never climb ladders or crawl; occasionally climb stairs, balance, or stoop; avoid exposure to heights and machinery; and

---

[1]"Sedentary work" is defined as:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a).

> perform simple 3-4 step job tasks, able to tolerate occasional changes in the workplace.  Thus, the claimant was unable to perform any past relevant work (20 C.F.R. § 404.1565).
>
> 5. Considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could perform through the last date insured, including cashier, parking lot attendant, and ticket taker (20 C.F.R. §§ 404.1569, 404.1569(a)).  Therefore, the claimant was not under a disability, as defined in the Social Security Act, at any time from April 30, 2012, the alleged disability onset date, and March 31, 2016, the last insured date.  (20 C.F.R. §§ 404.1520(g)

R. 15-24.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review.  42 U.S.C. § 405(g).  Plaintiff then filed this civil action requesting reversal or remand of that adverse decision.

Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ erred by failing to:  (1) find Plaintiff met Listing 1.04B; (2) give proper weight to Plaintiff's treating physician; and (3) properly evaluate his pain under the Holt standard.  See doc. nos. 12 ("Pl.'s Br."), 18 ("Pl.'s Reply").  The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed.  See doc. no. 17 ("Comm'r's Br.").

## II.     STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards.  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  Moore v. Barnhart, 405 F.3d 1208, 1211

(11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of Commissioner's legal conclusions are not subject to substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.  DISCUSSION

Plaintiff argues the ALJ erred by determining Plaintiff's impairments did not meet Listing 1.04B. Pl.'s Br., pp. 12-16; Pl.'s Reply, pp. 1-4. The Commissioner argues in response substantial evidence supports the ALJ's determination because the objective evidence does not support a finding Plaintiff's condition satisfies all requirements of the Listing. Comm'r's Br., pp. 4-14. For the reasons stated below, the ALJ's determination is not supported by substantial evidence.

#### A.  The ALJ Failed to Consider All Objective Evidence of Record When Deciding Whether Plaintiff's Severe Impairment Met Listing 1.04B

At step three of the evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that his condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014) (*per curiam*); Wilkinson *ex rel*. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show that his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 404.1520(d).

Plaintiff argues his severe impairment met Listing 1.04B. Pl.'s Br., pp. 15-19. Listing 1.04 requires:

> [A disorder] of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet, arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defiled in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04.

On September 17, 2014, Dr. Benjamin Cahan, M.D., performed a CT myelogram on Plaintiff and determined the findings were "worrisome for arachnoiditis," observing "moderate neural foraminal narrowing on the right at L5-S1 due to an osteophyte projecting into the lateral recess and neural foranima." R. 452. Dr. Kevin Ammar, M.D., at the Neurological Institute of Savannah and Center for Spine, reviewed the CT myelogram results and found "evidence of arachnoiditis which shows adhesion and clumping of the nerve roots." R. 458. Accordingly, Dr. Ammar diagnosed Plaintiff with arachnoiditis as "the most likely etiology of [Plaintiff's] symptoms" and recommended a spinal cord stimulator for his back and leg pain. R. 458, 460-61. Plaintiff reported a fifty percent improvement concerning his pain with the trial spinal cord

stimulator and ultimately received a permanent stimulator. R. 471, 475-76.

On March 31, 2016, Dr. James H. Braziel, III, M.D., Plaintiff's treating pain management physician, completed a physical capacity evaluation and treating source statement. R. 506-514. In the physical capacity evaluation, Dr. Braziel listed "lumbar arachnoiditis" as one of Plaintiff's diagnoses and attributed the impairment as the source of Plaintiff's chronic pain. R. 506, 509. Dr. Braziel also described Plaintiff's arachnoiditis as "chronic and not likely to respond to any therapy available today." R. 510. Finally, in the treating source statement, Dr. Braziel opined Plaintiff had been diagnosed with arachnoiditis and the diagnosis was confirmed by appropriate medically acceptable imaging, specifically citing the September 17, 2014 CT myelogram. R. 513.

In her decision, the ALJ generally cites the portions of the record containing references to the diagnosis of Plaintiff's arachnoiditis. See R. 15, 20, 22. However, the ALJ fails to discuss or even acknowledge the September 17, 2014 CT myelogram or resulting diagnosis of arachnoiditis. While the ALJ notes Plaintiff was treated at the Neurological Institute of Savannah from September 2014 through December 2014, R. 20, she fails to reference Drs. Cahan and Ammar as the treating physicians or specify their opinions as to Plaintiff's impairments. R. 19-20. Furthermore, the ALJ erroneously finds Plaintiff's treatment from 2014 through 2015 remained constant, stating "[a]t no time did any treating physician recommend additional treatment measures," when Dr. Ammar recommended, and Plaintiff ultimately received, a spinal cord stimulator during that time period. Id.

As to Dr. Braziel's physical capacity evaluation and treating source statement, the ALJ notes they contain no functional limitations precluding Plaintiff's performance of sedentary work and states some of the postural limitations in Dr. Braziel's physical capacities evaluation "have

7

been accounted for" in the RFC. R. 20. The ALJ gives some weight to Dr. Braziel's treating source statement "only to the extent that it confirms the claimant suffers from chronic back pain, symptomatic of a spine disorder," and assigns no weight to the physical capacities evaluation. R. 22. However, although the arachnoiditis diagnosis is mentioned at least four times in these documents, the ALJ fails to acknowledge it in her evaluation of Dr. Braziel's opinions.

In performing the step three analysis, the ALJ states Plaintiff's "degenerative disc disease does not satisfy the criteria of section 1.04 of Appendix 1, dealing with disorders of the spine, as evidence fails to show requisite nerve root compression, spinal arachnoiditis or lumbar spinal stenosis resulting in inability to ambulate effectively." R. 17. However, as described above, there is evidence of spinal arachnoiditis in the record, i.e., the September 17th CT myelogram. Accordingly, the ALJ's step three determination Plaintiff's severe impairments do not meet Listing 1.04 is not supported by substantial evidence, as she failed to consider all of the objective evidence of record. McCruter, 791 F.2d 1548.

The Commissioner argues substantial evidence supports the ALJ's finding because: (1) diagnostic imaging does not indicate Plaintiff's condition resulted in compromise of a nerve root or the spinal cord; (2) the CT myelogram did not confirm spinal arachnoiditis; (3) the alleged spinal arachnoiditis was not "manifested by severe burning or painful dysesthesia"; and (4) Plaintiff failed to prove he needed to change position or posture more than once every two hours due to spinal arachnoiditis. Comm'r's Br., pp. 6-10. However, the Commissioner's explanation of why the record supports the ALJ's conclusions cannot excuse the ALJ's failure to consider the medical evidence indicating Plaintiff suffered from spinal arachnoiditis, which may have resulted in a finding Plaintiff's impairments satisfied the criteria of Listing 1.04B. Furthermore, although the ALJ briefly addressed the subpart

8

requirements of Listing 1.04 – evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis – she failed to address the 1.04 introductory paragraph requirement of compromise of a nerve root or the spinal cord. R. 17-18. Instead, she merely recited the titled of the three subsections (A) to (C) and states generically there is no evidence of these conditions. Id. The Court cannot now engage in an administrative review that was not done in the first instance at the administrative level, but rather must examine the administrative decision as delivered. Mills v. Astrue, 226 F. App'x 926, 931-32 (11th Cir. 2007) (acknowledging evidence in record not mentioned by ALJ may support administrative decision but concluding court could not "say the error was harmless without re-weighing the evidence," which would require "conjecture that invades the province of the ALJ"); see also Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]").

The Court offers no opinion on what a complete and accurate review of the administrative record might conclude on Plaintiff's disability applications, but the Court cannot conclude that the decision as reported by the ALJ is supported by substantial evidence. As such, remand is warranted. The Court need not reach Plaintiff's remaining contentions. Cf. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert testimony alone warrants reversal,' we do not consider the appellant's other claims.") Of course, should the District Judge accept this recommendation, on remand, Plaintiff's claims must be evaluated in accordance with the sequential evaluation process and in compliance with the applicable regulations and case law in all respects.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 4th day of December, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA